■ FRANK CERVERA, Appellant, v ROSSANNA BRESSLER, Respondent. [855 NYS2d 658]—

In a matrimonial action in which the parties were divorced by

judgment dated February 21, 2001, the plaintiff appeals, as limited by his brief, from stated portions of an order of the Supreme Court, Westchester County (Lubell, J.), entered September 18, 2007, which, inter alia, referred those branches of his motion which were for unmonitored telephone contact and unsupervised visitation with the parties' child to the trial court, and denied those branches of his motion which were for an award of an interim attorney's fee, to modify the apportionment of responsibility for payment of the forensic evaluator's fee, and to remove Joshua D. Siegel as the attorney for the child.

Ordered that on the Court's own motion, the notice of appeal from so much of the order as deferred until trial the issues of unmonitored telephone contact and unsupervised visitation is treated as an application for leave to appeal, and leave to appeal is granted (see CPLR 5701 [c]); and it is further,

Ordered that the order is modified, on the law, the facts, and in the exercise of discretion (a) by deleting the first, second, third, and fourth decretal paragraphs thereof referring to the trial court those branches of the father's motion which were for unmonitored telephone contact and unsupervised visitation and substituting therefor a provision restoring conditional unmonitored telephone contact and unsupervised visitation, (b) by deleting the eighth and ninth decretal paragraphs thereof relating to an interim attorney's fee and forensic evaluator fees and substituting therefor a provision directing that a hearing be held to determine the parties' relative financial positions, and (c) by deleting the sixteenth decretal paragraph thereof denying that branch of the plaintiff's motion which was to remove Joshua D. Siegel as attorney for the child and substituting therefor a provision granting that branch of the plaintiff's motion; as so modified, the order is affirmed insofar as appealed from, with costs to the appellant, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith, including, inter alia, an immediate hearing on the issues of telephone contact and visitation, without an updated forensic report, the appointment of a new attorney for the child, and the setting of such conditions of unmonitored telephone contact and unsupervised visitation as the Supreme Court in its discretion may direct.

Since the parties' divorce in February 2001 they have been involved in constant litigation surrounding custody of their child and the visitation rights of the noncustodial father. On September 25, 2003, in open court, the parties entered into a stipulation, later so-ordered by the court, in which they agreed

to joint custody, with primary physical custody with the mother, visitation to the father on alternate weekends and one weekday per week, and the removal of certain restrictions on visitation that had been imposed temporarily.

In July 2005 the attorney for the child, then known as the law guardian for the child, moved by order to show cause, signed by the court on July 28, 2005, for supervised visitation, based on various allegations by the mother, including one allegation of sexual molestation. The sexual molestation allegation was subsequently determined to be unfounded by the Office of Children and Family Services (hereinafter OCFS). Although a hearing on the motion of the attorney for the child was scheduled at least once, for some reason, not apparent in the record, it never took place, and visitation by the father has remained supervised since July 28, 2005.

"Visitation is a joint right of the noncustodial parent and of the child" (*Weiss v Weiss,* 52 NY2d 170, 175 [1981]; *see Twersky v Twersky,* 103 AD2d 775 [1984]), and "the best interests of a child lie in his being nurtured and guided by both of his natural parents" (*Daghir v Daghir,* 82 AD2d 191, 193 [1981], *affd* 56 NY2d 938 [1982]; *see Matter of Gerald D. v Lucille S.,* 188 AD2d 650 [1992]). For a noncustodial parent to develop a meaningful, nurturing relationship with his or her child, "visitation must be frequent and regular" (*Daghir v Daghir,* 82 AD2d at 194, *affd* 56 NY2d 938 [1982]; *see Matter of Graves v Smith,* 264 AD2d 844 [1999]; *Matter of Gerald D. v Lucille S.,* 188 AD2d at 650). "Absent extraordinary circumstances, where visitation would be detrimental to the child's well-being, a noncustodial parent has a right to reasonable visitation privileges" (*Twersky v Twersky,* 103 AD2d at 775-776; *see Matter of Brian M. v Nancy M.,* 227 AD2d 404 [1996]; *Matter of Schack v Schack,* 98 AD2d 802 [1983]).

"It is within the sound discretion of the court to determine whether visitation should be supervised" (*Matter of Morgan v Sheevers,* 259 AD2d 619, 620 [1999]; *see Matter of Custer v Slater,* 2 AD3d 1227, 1228 [2003]), and its determination will not be set aside unless it lacks a sound and substantial basis in the record (*see Matter of Khan v Dolly,* 39 AD3d 649, 651 [2007]; *Matter of Kachelhofer v Wasiak,* 10 AD3d 366 [2004]; *Matter of Levande v Levande,* 308 AD2d 450, 451 [2003]). "Supervised visitation is appropriately required only where it is established that unsupervised visitation would be detrimental to the child" (*Matter of Gainza v Gainza,* 24 AD3d 551 [2005]; *see Rosenberg v Rosenberg,* 44 AD3d 1022, 1024 [2007]; *Purcell v Purcell,* 5 AD3d 752, 753 [2004]).

Here, because no hearing was ever held on the order to show cause brought by the attorney for the child, signed by the court on July 28, 2005, visitation has remained supervised, and telephone contact between father and daughter has been monitored, for about 2½ years, based solely on the hearsay allegations of the mother. These consisted of the allegations of molestation, which were determined by OCFS to be unfounded, and stories of various incidents, the details of which were disputed by the father and, in any event, were insufficient to show that unsupervised visitation would be "detrimental to the child's well-being" (*Matter of Graves v Smith,* 264 AD2d at 845; *see Purcell v Purcell,* 5 AD3d at 752). Under these circumstances, it is unacceptable to this Court that the hearing in this matter has not been held, although ordered more than 2½ years ago. Moreover, where, as here, "there is much anger, hostility and resentment between the parties" (*Matter of Schack v Schack,* 98 AD2d at 802), it was especially unfortunate that the Supreme Court permitted the mother to have so much control over visitation and, especially, over telephone contact between father and daughter. This arrangement resulted in the violation of the father's right to "reasonable access and visitation" (*Matter of Schack v Schack,* 98 AD2d at 802; *see Matter of Smith v Molody-Smith,* 307 AD2d 364, 365 [2003]).

Additionally, the court should not have required the father to pay the cost of supervising his visitation without determining the "economic realities," including his ability to pay and the actual cost of each visit (*Matter of Rueckert v Reilly,* 282 AD2d 608, 609 [2001]).

Contrary to the father's contentions, the court properly declined to direct the attorney for the child to testify and submit his files and notes as part of discovery. To have ruled otherwise would have resulted in two violations of the ethical requirements applicable to all attorneys, including an attorney for the child, that the attorney may not disclose a client's confidences and may not become a witness in the litigation (*see* 22 NYCRR 7.2 [b]).

However, the court improvidently exercised its discretion in denying that branch of the father's motion which was to remove Joshua D. Siegel as the attorney for the child. "An [attorney for the child] should not have a particular position or decision in mind at the outset of the case before the gathering of evidence . . . On the other hand, '[attorneys for children] are not neutral automatons. After an appropriate inquiry, it is entirely appropriate, indeed expected, that a[n attorney for the child] form an opinion about what action, if any, would be in a child's best

interest' " (*Matter of Carballeira v Shumway*, 273 AD2d 753, 756 [2000], quoting Besharov, Practice Commentaries, McKinney's Cons Law of NY, Book 29A, Family Ct Act § 241, at 218-219).

"[An] attorney for the child[ ] [is] not an investigative arm of the court. While [attorneys for the children], as advocates, may make their positions known to the court orally or in writing (by way of, among other methods, briefs or summations), presenting reports containing facts which are not part of the record or making submissions directly to the court ex parte are inappropriate practices" (*Weiglhofer v Weiglhofer*, 1 AD3d 786, 789 [2003] [internal quotation marks and citations omitted]).

Here, in the order to show cause signed July 28, 2005, and the affirmation in support, as well as in every affirmation submitted thereafter, the attorney for the child included facts which were not part of the record, but which constituted hearsay gleaned from the mother. This behavior on the part of the attorney for the child, as well as his repeated ad hominum attacks on the father's character, is both unprofessional and improper, as it amounts to the attorney for the child acting as a witness against the father, in violation of the Rules of the Chief Judge (*see* 22 NYCRR 7.2 [b]). Accordingly, the court should have granted that branch of the motion which was to remove Joshua D. Siegel as the attorney for the child.

With regard to attorney's fees and apportionment of the forensic evaluator's fees, as there is no evidence in the record that the financial circumstances of the parties have ever been fully considered, or that the father has ever been afforded an opportunity to challenge the apportionment of fees, "a right expressly reserved to him in [a] prior order" (*Cervera v Cervera*, 43 AD3d 849, 850 [2007]), we remit the matter to the Supreme Court, Westchester County, for a hearing to consider the parties' relative financial positions.

Contrary to the father's contention, the Supreme Court, in effect, granted that branch of the father's motion which was to rescind so much of the order dated May 15, 2007, as directed the parties to provide certain releases to the forensic evaluator by limiting the scope of such releases to the contact and communication allowed by the so-ordered stipulation dated September 25, 2003. Spolzino, J.P., Lifson, Florio and Dickerson, JJ., concur.