■ In the Matter of MATTHEW BROWN, Respondent, v SHANNA SIMON, Appellant. [1 NYS3d 238]—

Appeal from an order of the Family Court, Westchester County (Michelle I. Schauer, J.), entered January 14, 2014. The order, after a hearing, inter alia, granted the father's petition to modify an order of custody so as to grant him sole legal and physical custody of the subject child and denied the mother's petition to modify the order of custody so as to grant her sole legal and physical custody of the subject child.

Ordered that the order is reversed, on the law and the facts, without costs or disbursements, and the matter is remitted to the Family Court, Westchester County, for complete forensic evaluations of the parties, their living environments, and the subject child, for the appointment of a new attorney for the subject child, and for a de novo hearing and new determination of the petitions; and it is further,

Ordered that pending the new determination of the petitions, the mother shall have residential custody of the subject child, and the father shall have visitation in accordance with the parties' custody agreement dated August 14, 2012.

The parties are the parents of the subject child, who was born in September 2010. Shortly before the birth of the subject child, the mother moved into the father's home with her then-eight-year-old daughter from another relationship. When the parties' relationship ended in 2012, the mother, the subject child, and her other daughter moved out of the father's home. Thereafter, on August 14, 2012, the parties entered into an agreement to share joint custody of the subject child, with the mother to have residential custody. That agreement was embodied in an order entered on consent of the parties.

Shortly after the agreement was entered into, the subject child's day care provider in Westchester reported to the father that the subject child was not allowing herself to be cleaned when her diaper was being changed, and her resistance had gotten worse. Although an examination of the subject child by her pediatrician revealed no physical evidence of sexual abuse, the day care provider reported her concerns to the Westchester County Department of Social Services, Office of Child Protective Services (hereinafter CPS). The father and mother each filed a petition seeking sole custody of the subject child.

Before a hearing on the petitions was held, the attorney for the subject child, based on the out-of-court statements of the day care provider, made an application for the father to be awarded temporary custody of the subject child. The Family Court granted that application. Such an award was improper, as it was based on the disputed hearsay allegations (*see Matter of Swinson v Brewington*, 84 AD3d 1251, 1253-1254 [2011]). However, the issues raised by the mother regarding the granting of temporary custody of the subject child to the father have been rendered academic, as that award is no longer in effect (*see Matter of Julian S. [Patricia L.]*, 121 AD3d 796 [2014]; *Matter of Chamas v Carino*, 119 AD3d 564, 565 [2014]).

During the hearing on the petitions, the Family Court erred in permitting the father to testify that the subject child told him that the mother's other daughter "did it." The father's testimony was intended to show that the mother's other daughter might have sexually abused the subject child. The statement was inadmissible hearsay, and did not qualify as either prompt outcry evidence, or as a spontaneous declaration (*see People v Reynoso*, 73 NY2d 816, 819 [1988]; *People v Allen*, 13 AD3d 892, 894-895 [2004]; *People v Sullivan*, 117 AD2d 476 [1986]; Jerome Prince, Richardson on Evidence, § 8-608 at 642; § 8-615 at 653 [Farrell 11th ed 1995]). Further, the admission of this hearsay statement cannot be deemed to be harmless, as this hearsay statement was the only evidence presented to support the allegations that the subject child had been sexually assaulted and that the sexual assault was committed by the subject child's older sibling.

Both CPS and the Administration for Children's Services investigated the allegations and concluded that the allegations were unfounded. Moreover, a nurse practitioner, who performs medical examinations of children who are suspected to have been abused or neglected, and who was qualified as an expert in the area of child abuse, testified that she had examined the subject child in the context of the CPS investigation and

concluded that there was no evidence that the subject child had been physically or sexually abused. She also testified that a two-year-old's resistance to having her diaper changed was not an indication that the child was being sexually abused.

The Family Court also erred in overruling the mother's objection to the testimony of her other daughter's treating physician about his treatment of that child on the ground that the Privacy Rule standard of the Health Insurance Portability and Accountability Act of 1996 (hereinafter HIPAA) for disclosure of her other daughter's medical information was not met (*see* 45 CFR 164.512 [e] [1] [i], [ii]). The mother's other daughter was not a party to the proceeding, and permitting her treating physician to testify in violation of HIPAA directly impaired the interest protected by the HIPAA Privacy Rule of keeping one's own medical records private. As such, the Family Court should have sustained the mother's objection to this testimony (*see Matter of Miguel M. [Barron]*, 17 NY3d 37, 45 [2011]). This error also cannot be deemed harmless, as the physician's testimony was used by the father and the attorney for the subject child to portray the mother's other daughter as seriously disturbed.

However, contrary to the mother's contention, the Family Court properly granted the motion of CPS to quash a subpoena served upon it by the mother, as she did not establish the applicability of any statutory provision allowing her to introduce into evidence the report that concluded that the allegations of sexual abuse of the subject child were unfounded. Similarly, the mother did not establish the applicability of a statutory provision that would allow her to introduce the entire case record of the CPS investigation (*see* Family Court Act § 651-a; *see also* Social Services Law § 422 [5] [b] [i]; *Matter of Brockington v Alexander*, 26 AD3d 884, 885 [2006]; *Matter of Humberstone v Wheaton*, 21 AD3d 1416, 1417 [2005]).

The Family Court erred in failing to order forensic evaluations of the parties, their living environments, and the subject child prior to issuing a decision on the petitions. "In custody disputes, the value of forensic evaluations of the parents and children has long been recognized" (*Ekstra v Ekstra*, 49 AD3d 594, 595 [2008]). "Although forensic evaluations are not always necessary, such evaluations may be appropriate where there exist sharp factual disputes that affect the final determination" (*see Matter of Shanika M. v Stephanie G.*, 108 AD3d 717, 718 [2013]). Here, in the absence of such evaluations, the record in this case is inadequate to support the court's finding that it was in the best interest of the subject child for the father to be awarded sole custody of her.

Moreover, "[an attorney for the child] should not have a particular position or decision in mind at the outset of the case before the gathering of evidence" (*Matter of Carballeira v Shumway*, 273 AD2d 753, 756 [2000]). It is only appropriate for an attorney for a child to form an opinion as to what would be in the child's best interest, after such inquiry (*see id.*; *see also Cervera v Bressler*, 50 AD3d 837, 840-841 [2008]). Here, it was inappropriate for the attorney for the subject child to have advocated for a temporary change in custody without having conducted a complete investigation. The attorney for the subject child acknowledged that his application was based solely on his discussion with the father and the subject child's day care provider, which was located near the father's residence, and that he did not speak to the mother or the subject child's other day care provider closer to the mother's residence.

Accordingly, we remit the matter to the Family Court for a de novo hearing and new determination on the parties' petitions. Prior to that hearing, complete forensic evaluations of the parties, their living environments, and the subject child are to be conducted. While the matter is pending for the evaluations, the de novo hearing, and the new determination on the petitions, the subject child shall reside with the mother, and the father's visitation with the subject child will be as set forth in the parties' custody agreement dated August 14, 2012. In addition, the Family Court shall appoint a new attorney for the subject child.

The mother's remaining contentions, and the contention of the attorney for the subject child concerning the qualification of certain witnesses as experts, are without merit. Dillon, J.P., Dickerson, Austin and Cohen, JJ., concur.