Silverman v Silverman (2020 NY Slip Op 04338)





Silverman v Silverman


2020 NY Slip Op 04338


Decided on July 29, 2020


Appellate Division, Second Department


Christopher, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 29, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
REINALDO E. RIVERA
SHERI S. ROMAN
LINDA CHRISTOPHER, JJ.


2018-14203
 (Index No. 2398/14)

[*1]Robert Silverman, respondent, 
v
Twila Silverman, appellant.



APPEAL by the defendant, in an action for a divorce and ancillary relief, from an amended order of the Supreme Court (James F. Quinn, J.), dated September 13, 2018, and entered in Suffolk County. The amended order, insofar as appealed from, after a hearing, granted that branch of the plaintiff's motion which was to modify the parties' so-ordered stipulation of settlement so as to award him residential custody of the parties' children.



Law Offices of Eyal Talassazan, P.C., Garden City, NY, for appellant.
Tabat, Cohen, Blum & Yovino, P.C., Hauppauge, NY (Robert A. Cohen and Michael R. Gionesi of counsel), for respondent.
Paraskevi Zarkadas, Centereach, NY, attorney for the children.



CHRISTOPHER, J.


OPINION & ORDER
This appeal raises the primary issue of the role of an attorney for the child (hereinafter AFC) in representing her or his clients in a contested custody proceeding. The defendant in this action for a divorce and ancillary relief appeals from so much of an amended order of the Supreme Court, Suffolk County, dated September 13, 2018, as, after a hearing, granted that branch of the plaintiff's motion which was to modify the parties' so-ordered stipulation of settlement so as to award him residential custody of the parties' children.
On this appeal, we agree with the defendant that the AFC improperly substituted judgment and took a position that was contrary to the wishes of her clients, the parties' children, to such a degree that the amended order should be reversed insofar as appealed from, and the matter remitted to the Supreme Court, Suffolk County, for the appointment of a new AFC, and a de novo hearing and new determination thereafter of that branch of the plaintiff's motion which was to modify the parties' so-ordered stipulation of settlement so as to award him residential custody of the parties' children.
Factual and Procedural Background
The parties were married in 1995 and have two children, born in September 2004 and November 2006. The plaintiff commenced this divorce action in 2014. The parties entered into a so-ordered stipulation of settlement dated October 17, 2016 (hereinafter the stipulation), whereby they agreed to joint legal custody of the children, with residential custody to the defendant and parental access to the plaintiff, which included therapeutic parental access in addition to his scheduled parental access. In April 2017, prior to the entry of a judgment of divorce, the plaintiff moved, inter alia, to modify the stipulation so as to award him residential custody of the children.
While the plaintiff's motion was pending, the defendant filed a family offense petition dated November 21, 2017, in the Family Court, alleging that the plaintiff strangled the youngest [*2]child. The Family Court issued a temporary order of protection against the plaintiff, which, inter alia, directed him to stay away from the children. The plaintiff successfully moved to transfer the family offense proceeding to the Supreme Court. After an in camera interview with the children, the Supreme Court dismissed the family offense petition, vacated the temporary order of protection, and directed overnight parental access with the plaintiff, to commence after several therapeutic sessions with a psychologist, Robert Goldman. Thereafter, the Supreme Court held a five-day hearing in May 2018 regarding, inter alia, that branch of the plaintiff's motion which was to modify the stipulation.
After the hearing, by amended order dated September 13, 2018, the Supreme Court, inter alia, granted that branch of the plaintiff's motion which was to modify the stipulation so as to award him residential custody of the children.
Analysis
On appeal, the defendant contends, inter alia, that the AFC improperly substituted judgment and took a position contrary to the wishes of her clients. We agree.
An AFC is required to "zealously advocate the child's position" (22 NYCRR 7.2[d]; see Matter of Young v Young, 161 AD3d 1182, 1182). In order to determine the child's wishes, the AFC must "consult with and advise the child to the extent of and in a manner consistent with the child's capacities, and have a thorough knowledge of the child's circumstances" (22 NYCRR 7.2[d][1]). The rules further state that
" the [AFC] should be directed by the wishes of the child, even if the [AFC] believes that what the child wants is not in the child's best interests' and that the [AFC] should explain fully the options available to the child, and may recommend to the child a course of action that in the [AFC]'s view would best promote the child's interests'" (Matter of Mark T. v Joyanna U., 64 AD3d 1092, 1093-1094, quoting 22 NYCRR 7.2[d][2]).
An AFC would be justified in substituting judgment and advocating a position that is contrary to the child's wishes only if the AFC is "convinced either that the child lacks the capacity for knowing, voluntary and considered judgment, or that following the child's wishes is likely to result in a substantial risk of imminent serious harm to the child" (22 NYCRR 7.2[d][3]; see Matter of Brian S. [Tanya S.], 141 AD3d 1145, 1147). "In such situations the attorney must still inform the court of the child's articulated wishes if the child wants the attorney to do so'" (Matter of Mark T. v Joyanna U., 64 AD3d at 1094, quoting 22 NYCRR 7.2[d][3]).
As retired Justice Sondra Miller wrote in a recent article, entitled "The Voice of the Child: Critical and Often Compelling," "Significant decisional precedent (trial and appellate) before and after the Matrimonial Commission Report reflected acceptance of [the] role of the attorney for the child as representing the child's wishes, not the opinion of the child's attorney as to his [or her] best interests" (Sondra Miller, The Voice of the Child: Critical and Often Compelling, NYLJ [online], Sept. 12, 2019).
Recently, this Court reinforced the role of the AFC in an opinion written by Presiding Justice Scheinkman wherein the mother contested the AFC's standing to appeal on behalf of the subject child from a custody determination. In Matter of Newton v McFarlane (174 AD3d 67, 74-75), Presiding Justice Scheinkman wrote,
"Substantively, and more importantly, it cannot be denied that a teenaged child has a real and substantial interest in the outcome of litigation between the parents as to where the child should live and who should be entrusted to make decisions for the child. It seems self-evident that the child is the person most affected by a judicial determination on the fundamental issues of responsibility for, and the environment of, the child's upbringing. To rule otherwise would virtually relegate the child to the status of property, without rights separate and apart from those of the child's parents. As Chief Judge Charles D. Breitel stated in the landmark case of Matter of Bennett v Jeffreys (40 NY2d 543, 546 [1976]): a child is a person, and not a subperson over whom the parent has an absolute possessory interest. A child has rights too, some of which are of . . . constitutional magnitude.' Among those rights is the child's right to have his or her [*3]best interests, and his or her position concerning those interests, given consideration by the court."
In this case, the AFC advised the Supreme Court that the children wanted to spend daytime with the plaintiff but they wanted to spend overnights with the defendant. They wanted residential custody to remain with the defendant. The AFC informed the court of her clients' position at the beginning of the hearing and even stated the following:
"The Appellate Division governing my representation of children has made the rules very clear. Unless I can demonstrate that my clients suffer from some type of mental or physical handicap, that they're not articulate, that they cannot think properly, or that they want something which is not good for them, I cannot substitute judgment. Do I think these children should have a relationship with both parents? I absolutely do. Can I substitute judgment for what my clients want based on what I think? The Appellate Division made it clear. I cannot."
Nevertheless, the AFC's representation was in direct contravention of her clients' stated parameters. Throughout the course of the proceedings, she failed to advocate on behalf of her clients, who were 13 and 11 years old at the time of the hearing, and who were both on the high honor roll and involved in extracurricular activities. The AFC actively pursued a course of litigation aimed at opposing their stated positions. She joined the plaintiff in opposing the introduction of evidence and witnesses in support of the defendant's case. When the defendant sought to introduce evidence in defense of the plaintiff's allegations that the defendant provided the children with unnecessary medical care, the AFC joined the plaintiff in opposing the introduction of the defendant's evidence. The AFC also opposed the introduction of evidence that may have supported one child's claim that the plaintiff attempted to strangle her. The AFC objected to the testimony of school personnel for the purpose of explaining the children's seemingly excessive school absences. The AFC's questions of the plaintiff during cross-examination were designed to elicit testimony in support of the plaintiff's case, in opposition to her clients' wishes. Her questions of Goldman, the psychologist chosen by the parties to provide therapeutic parental access, included whether one child's alleged parentification interfered with the other child's relationship with the plaintiff. Her questions were aimed at supporting the plaintiff in his quest for residential custody. The AFC objected to the introduction of witnesses and evidence favorable to the defendant's case, but she did not make similar objections to the plaintiff's evidence. Upon successfully arguing to preclude the defendant's proffered evidence, the AFC proceeded to use the defendant's lack of evidence to support the plaintiff's positions. She also failed to object to the Supreme Court's decision to limit the amount of time for the defendant to present her case. Not only did the AFC join the plaintiff in supporting his case, she also failed to take an active role in the proceedings by presenting evidence and witnesses on behalf of her clients (see Matter of Payne v Montano, 166 AD3d 1342, 1345).
The AFC's failure to support her clients' position is particularly troubling due to the allegations of domestic violence made by both the defendant and the children. The defendant advised Goldman during the first of her two sessions with him that the plaintiff had physically abused her and that the children had witnessed him choking her and grabbing her arm. She was concerned that the children did not want to go with the plaintiff because they were afraid of him. In accordance with the stipulation, Goldman was retained by the parties for the purpose of therapeutic parental access with the plaintiff and the children. To this end, Goldman met with the plaintiff approximately 26 times and often with the children as well. Goldman testified that he had significant expertise regarding issues of "parental alienation syndrome." The Supreme Court found Goldman to be an expert as a "behavioral [psychologist] and not as a specialist in the field of parental alienation syndrome, since it is not recognized by the courts of the State of New York." However, Goldman testified at great length as to the defendant's "alienating behavior." Had the AFC engaged in a more robust representation of her clients, the issues of domestic violence as it relates to alienating behavior could have been more fully presented. For example, in support of her clients' wishes, the AFC might have called as a witness the forensic evaluator who prepared a report prior to the stipulation, wherein custody to the defendant was recommended. Instead, the AFC called no witnesses and presented no evidence.
When appearing before this Court for oral argument, the AFC stated that her clients were not doing well, but she hoped they would improve. Nevertheless, she continued to argue in support of residential custody to the plaintiff, in opposition to the wishes of her clients, who were 15 and almost 13 at the time.
The record establishes that neither of the exceptions to the rules regarding the AFC's duty are present here. There was no finding that the children lacked the capacity for knowing, voluntary, and considered judgment (see 22 NYCRR 7.2[d][3]). This exception generally applies to young children and children with disabilities (see Matter of Edmonds v Lewis, 175 AD3d 1040, 1041; Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1011). Here, the children were certainly not too young, nor was there sufficient evidence in the record that they suffered from a mental, physical, or emotional disability to such an extent that their ability to make a knowing, voluntary, and considered judgment was impaired. Hence, the children failed to receive meaningful assistance of counsel (see Matter of Mark T. v Joyanna U., 64 AD3d at 1094; Matter of Dominique A.W., 17 AD3d 1038, 1040; Matter of Jamie TT., 191 AD2d 132, 135-137).
While the Supreme Court found that the defendant had "over parentified the two girls," and that the children had "become totally dependent upon [the defendant]" and "creat[ed] a co-dependency between the [defendant] and/or their siblings," there was no evidence of imminent, serious harm to the children (see 22 NYCRR 7.2[d][3]). The AFC argued that the defendant's custody was detrimental to the normal social, emotional, and psychological development of the children. Although the plaintiff was concerned about the amount of school the children missed while in the defendant's custody, this, while not in the long-term best interests of the children, did not pose a substantial risk of serious imminent harm (see Matter of Brian S. [Tanya S.], 141 AD3d at 1148). Under these circumstances, it was improper for the AFC to substitute judgment and take a position that was contrary to the wishes of the children.
Moreover, "in determining custody, while the express wishes of children are not controlling, they are entitled to great weight, especially where their age and maturity would make their input particularly meaningful" (Matter of Cannella v Anthony, 127 AD3d 745, 746; see Matter of Samuel S. v Dayawathie R., 63 AD3d 746, 747). Here, the Supreme Court failed to take into account the stated preferences of the children, who were 13 and 11 years old at the time of the hearing, as some indication of their best interests.
Further, while not raised by either party, we take this opportunity to point out that in a case such as this, the better practice would have been to order an updated forensic evaluation of the parties and the children, particularly where issues of parental alienation, parentification, and Munchausen syndrome by proxy were raised (see E.V. v R.V., 130 AD3d 920, 921; Brown v Simon, 123 AD3d 1120, 1122; Stern v Stern, 225 AD2d 540, 541; Matter of Vernon Mc. v Brenda N., 196 AD2d 823, 825-826).
Conclusion
While a hearing court's determination is entitled to great weight and should not be set aside lightly (see Matter of Davis v Delena, 159 AD3d 900, 901), under the circumstances of this case, and for the reasons set forth above, the amended order is reversed insofar as appealed from, on the law and the facts, and the matter is remitted to the Supreme Court, Suffolk County, for the appointment of a new attorney for the children and a de novo hearing and new determination thereafter of that branch of the plaintiff's motion which was to modify the parties' so-ordered stipulation of settlement so as to award him residential custody of the parties' children.
SCHEINKMAN, P.J., RIVERA and ROMAN, JJ., concur.
ORDERED that the amended order is reversed insofar as appealed from, on the law and the facts, with costs, and the matter is remitted to the Supreme Court, Suffolk County, for the appointment of a new attorney for the children and a de novo hearing and new determination thereafter of that branch of the plaintiff's motion which was to modify the parties' so-ordered stipulation of settlement so as to award him residential custody of the parties' children; and it is further,
ORDERED that pending the de novo hearing and new determination of that branch of the plaintiff's motion, custody and parental access shall be in accordance with the parties' so-ordered stipulation of settlement.
ENTER:
Aprilanne Agostino
Clerk of the Court