■ In the Matter of PATRICIA LOBO, Formerly Known as PATRICIA MUTTEE, Respondent, v ROBERT MUTTEE, Appellant. [601 NYS2d 322] —In a child custody proceeding pursuant to Family Court Act article 6, the appeal is from (1) an order of

the Family Court, Nassau County (Feiden, J.), dated November 5, 1992, which denied the appellant's motion to set aside its decision dated August 20, 1992, (2) so much of an order of the same court, entered December 1, 1992, entered upon that decision, as, after a hearing, granted the petition and awarded sole custody of the parties' child to the petitioner mother, and (3) an order of the same court, dated November 5, 1992, which denied the appellant's motion for sanctions.

Ordered that the appeal from the order dated November 5, 1992, which denied the appellant's motion to set aside the decision is dismissed, without costs or disbursements, as no appeal lies from an order denying a motion to set aside a decision *(see, Behrens v Behrens,* 143 AD2d 617); and is further,

Ordered that the order entered December 1, 1992, is reversed insofar as appealed from, on the law and the facts, without costs or disbursements, and the matter is remitted to the Family Court, Nassau County, for complete forensic evaluations of the parties and the child and for a hearing de novo in accordance herewith before a different Judge, which hearing shall be held with all due speed; and it is further,

Ordered that pending the new determination of the petition for a change of custody, the father shall have temporary sole custody of the child, and the matter is remitted to the Family Court, Nassau County, to establish an appropriate visitation schedule for the mother; and it is further,

Ordered that the appeal from the order dated November 5, 1992, which denied the appellant's request for sanctions, is dismissed, without costs or disbursements, as abandoned.

The parties' child was born on August 12, 1987, shortly after their marriage. In May 1989 before the child was two years old, the parties signed a separation agreement, and the mother left the marital residence. The child remained with his father. The separation agreement provided that the parties were to have joint custody, that the child would reside with the father, and that the mother would have custody for certain specified periods. The terms of the separation agreement were incorporated into a judgment of divorce entered April 19, 1991. In July 1991 the mother petitioned for sole custody based on allegations of changed circumstances, including, *inter alia,* her remarriage. The father had also remarried, and the child had a stepbrother, who was two years older. Although evidence elicited at the hearing established that both parties love the child and each would be a fit custodial

parent, it was apparent that the joint custody arrangement was no longer working smoothly and was having a detrimental effect on the child. Following the hearing, the court granted the petition and awarded sole custody to the mother.

We recognize that a hearing court's determination should be accorded great deference on appeal, as it had the opportunity to assess the witnesses' demeanor and credibility. Nevertheless, the authority of this Court is as broad as that of the hearing court *(see, Matter of Louise E.S. v W. Stephen S.,* 64 NY2d 946), and we would be seriously remiss if we allowed a custody determination to stand which lacks a sound and substantial basis in the record *(see, Matter of Sullivan v Sullivan,* 190 AD2d 852; *Matter of Krebsbach v Gallagher,* 181 AD2d 363; *Matter of Robert T.F. v Rosemary F.,* 148 AD2d 449). We find that the evidence supports the hearing court's determination that joint custody is not in the child's best interest. However, we conclude that the determination to award sole custody to the mother is not supported by substantial evidence in the record.

A change of custody should be made only if the totality of the circumstances warrants a modification in the best interest of the child *(see, Matter of Sullivan v Sullivan, supra; Klat v Klat,* 176 AD2d 922). "Among the factors to be considered are the quality of the home environment and the parental guidance the custodial parent provides for the child * * * the ability of each parent to provide for the child's emotional and intellectual development * * * the financial status and ability of each parent to provide for the child * * * the relative fitness of the respective parents, and the length of time the present custody arrangement has been in effect" *(Matter of Krebsbach v Gallagher, supra,* at 364-365; *see also, Eschbach v Eschbach,* 56 NY2d 167; *Friederwitzer v Friederwitzer,* 55 NY2d 89; *Matter of Ellen K. v John K.,* 186 AD2d 656). Priority in custody disputes should usually be given to the parent who was first awarded custody by the court or by voluntary agreement because of the stability it assures in the child's life *(see, Eschbach v Eschbach, supra; Matter of Ellen K. v John K., supra; Matter of Krebsbach v Gallagher, supra),* and the court will not disrupt sibling relationships unless there is an overwhelming need to do so *(see, Eschbach v Eschbach, supra; Matter of Krebsbach v Gallagher, supra).*

Here, the court failed to give sufficient weight to the fact that the child, who was five years old at the time of the hearing, had resided with his father his entire life and that the father had been the primary caretaker after the mother

left the marital residence. The child's nursery school teacher testified that her primary contact was with the father and that, when the child was upset, he asked to call his father. The testimony of the child's doctor and his dentist established that their primary contact was with the father. A clinical psychologist, who had been treating the child for a year at the father's behest, testified that the child had a good relationship with his father, had bonded with his older stepbrother, and had a warm attachment to his new baby brother. He recommended that the child remain in the father's custody. The mother's expert witness, a child psychiatrist, interviewed the child, the mother, and her new husband on several occasions between August and September 1991. At the hearing the following April, the expert testified that the mother was a good parent and that the child felt comfortable in both homes, but he did not make a recommendation with respect to which parent should have sole custody. The Law Guardian recommended that the father be awarded sole custody, as he had been the primary caretaker, and the child was already assimilated into the father's household.

In its decision, the court inexplicably stated that the father had not sought custody. Further, the decision was based almost exclusively on the forensic reports prepared for the court. We find that these reports, and the testimony by their authors, failed to establish that an award of sole custody to the mother was in the child's best interests. Moreover, the reports failed to provide a complete evaluation of the parties and their home environments. We note that the court denied the Law Guardian's request for further evaluations. The consulting psychiatrist recommended that the mother have sole custody based on the parties' backgrounds and his perception that the mother was the more stable and reliable individual. He conceded on cross-examination, however, that he needed much more than his one-hour interview with each party to make a full and fair evaluation. He further acknowledged that he was not aware of certain relevant information regarding the mother's past and that his diagnosis of the father, which was apparently based on the father's problems with the law as a teenager approximately eight years earlier, was based on "soft evidence". The probation officer who interviewed the parties concluded essentially that either household would be appropriate but recommended custody to the mother primarily because of the child's age. The probation officer did not visit the mother's home or interview the child.

We conclude that the evidence established that the child

was well cared for by his father, with whom he had a close relationship, and that it is not evident on this record that the mother was able to provide a better home environment or better care. It appears from the court's decision that it did not seriously consider an award of sole custody to the father as an alternative to joint custody and that it did not adequately explore the impact a change of custody would have on the child. Under the circumstances, we find it appropriate to remit the matter for complete forensic evaluations and a de novo hearing before a different Judge. Upon consideration of the parties' original custody agreement, the evidence that the father was the child's primary caretaker prior to the court's decision, and the absence of a sound basis in this record for awarding sole custody to the mother, we grant the father temporary sole custody of the child pending a new determination on the mother's petition. The Family Court shall establish a visitation schedule for the mother consistent with the visitation provided the father in the order entered December 1, 1992. Bracken, J. P., Lawrence, Eiber and O'Brien, JJ., concur.