■ In the Matter of VERNON MC., Respondent, v BRENDA N., Appellant. [602 NYS2d 58] —In a custody proceeding pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Suffolk County (Freundlich, J.), entered April 2, 1992, which, after a hearing, awarded custody of the parties' child to the father, and granted visitation to the mother.

Ordered that the order is reversed, on the law and the facts, without costs and disbursements, and the matter is remitted to the Family Court, Suffolk County, for complete forensic evaluations of the parties and the child, and for a hearing *de novo,* in accordance herewith, which hearing shall be held with all due speed, and it is further,

Ordered that pending the determination after a *de novo* hearing, the custody of the child shall remain with the father, and the present visitation rights of the mother shall remain in effect.

The determination of a child's custody by a hearing court is entitled to great weight on appeal, and should not be set aside lightly, as it is to a large extent a matter of the court's discretion, depending heavily upon the Judge's assessment of the credibility of witnesses and the character and temperament of the parties *(see, Eschbach v Eschbach,* 56 NY2d 167). However, that discretion is not absolute and may be set aside where it lacks sound and substantial basis in the record, or is contrary to the weight of the evidence *(see, Matter of Darlene T.,* 28 NY2d 391, 395; *Conti v Conti,* 149 AD2d 395; *Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76). Indeed, "[a]n appellate court would be seriously remiss if, simply in deference to the finding of the Trial Judge, it allowed a custody determination to stand when it lacks a sound and substantial basis in

the record" *(Matter of Gloria S. v Richard B., supra,* at 76). We find that the trial court determination to grant custody to the father in this case lacks the requisite sound and substantial basis in the record.

The out-of-wedlock child who is the subject of these proceedings, born on May 17, 1989, was conceived when his father was the mother's high school guidance counselor. The father was then 40 years old and married. Their affair continued from 1985, when the mother was 19 years old and a student, to 1989, during which period the mother accompanied the father to motels on numerous trips to Albany, Buffalo, and Syracuse, where he was sent to attend guidance conferences. On some of these occasions, another 14-year-old female student joined them and participated in their sexual activities. As a result of a prior pregnancy for which the father was responsible, the mother underwent an abortion for which the father paid the expenses. However, when the child was born, the father paid none of the medical or hospital expenses, and refused to permit the mother to name the child after him or to use his name. Without any source of support, she was required to move into a shelter for the homeless. Although the father visited the child and mother regularly during his lunch hour, he spent no time alone with the child, and took no responsibility financially or otherwise for him. Early in 1991, when the child was about one and one-half years old, the mother left him in the care of her grandmother, intending to make a short trip to Jamaica, West Indies. However, she was arrested there for attempting to smuggle marihuana into the United States, and was incarcerated for a period of 8 or 9 months.

In April 1991 the father disclosed his relationship to the child and the mother to his wife, in the course of explaining his having contracted a sexually-transmitted disease. With his wife's consent, he then moved the child into their home, and brought a petition in the Family Court, Suffolk County, seeking custody. A temporary custody order was entered in October 1991. Upon the mother's release from prison and return to the United States, she immediately sought the return of her child, but was denied access to him by the father and his wife. A hearing on the father's petition for permanent custody was held in January 1992 which resulted in the order appealed from, which granted custody to the father.

At the one-day hearing, the court heard testimony from the mother, the father, his wife, the maternal grandfather, and the girl who allegedly accompanied the mother and father on

their trips. No probation report nor expert forensic testimony was provided. The father's attorney's request, made belatedly on the eve of trial, for forensic evaluations was denied. No law guardian was appointed. The evidence that was adduced was largely uncontroverted, neither party considered the other unfit, and neither contested the facts of their prior relationship or of the mother's incarceration. The court rendered its decision from the bench, concluding that the totality of the circumstances established that the child's best interests would be served by remaining in the custody of his father. He found both parties credible based upon the testimony and his assessment of the parties at that single day of hearing. He concluded that neither had any psychological problems, that they were both fit parents, and each able to take care of the child. He noted that the father was in a better financial position since he was employed, while the mother was just starting her vocational training as a computer analyst. The court expressed concern that if the child were placed with the mother, he would be left, while she was at school, with her father who lived in Brooklyn, in what the Judge believed was a high crime area. In reference to the father's sexual activities with the mother when he was her guidance counselor, the court described them as "indiscretion(s)". He similarly referred to the mother's incarceration for attempted drug transportation, finding those acts to be on an "equal basis * * * both Terrible indiscretions, but those things do not make either of you unsuited or unfit parents". Finding that the father's preferable home environment and financial ability weighted the scales in his favor, the court granted him custody.

We find that under the circumstances of this case, the court erred in failing to investigate the backgrounds, the psychological makeup of the parties, and the child's needs. In determining custody the court must consider several factors including, *inter alia,* the relative fitness of the parents, the parent's ability to provide for the child's emotional and intellectual needs, and the parental guidance available for the child *(see, Louise E. S. v. W. Stephen S.,* 64 NY2d 946; *Eschbach v Eschbach,* 56 NY2d 167, *supra; Matter of Ellen K. v John K.,* 186 AD2d 656, 657, 658). Although forensic evaluations may not be necessary in all custody cases *(see, Guevara v Guevara,* 132 AD2d 596), where serious issues of fitness are involved as here, the critical question of custody should not be decided on such limited evidence where independent evidence could have been obtained through the auxiliary services of the court system *(see,* Family Ct Act §§ 251, 252; *Matter of Bennett v*

*Jeffreys,* 40 NY2d 543, 551; *Giraldo v Giraldo,* 85 AD2d 164, 171). Clearly, a more in depth evaluation of the father's ability to provide parental guidance was called for in this case, given the gross misguidance he admittedly provided for both the mother and a 14-year-old girl when he abused a position of trust and authority and engaged both in sexual intercourse, simultaneously. Similarly, the mother's conviction for attempted transportation of drugs into this country indicates such a lack of judgment and respect for the law as to warrant a more meaningful appraisal of her parenting ability than the court's mere observation of her based upon a one-day hearing.

Moreover, the physical home environment provided by either parent should have been investigated by the probation department; instead, the court relied entirely upon photographs *(see, Matter of Lobo v Muttee,* 196 AD2d 585). While we recognize the legitimate concern of the court that custody disputes be promptly and finally resolved, such considerations should not surpass our concern that we have considered sufficient evidence to form a sound judgment as to the best interests of the child. Thus, we remit this matter to the Family Court for a probation investigation and report, and for psychiatric or psychological evaluations of the parties, to explore their relative fitness, and a psychological evaluation of the child, to determine the custodial arrangement that will serve his emotional, intellectual, and physical needs, and will be in his best interests.

We note lastly that had a law guardian been appointed, by proper exercise of that counsel's responsibility to protect the child's interest, the appropriate investigations and evaluations could have been vigorously advocated and this costly error might have been avoided. Rosenblatt, J. P., Miller, Santucci and Joy, JJ., concur.