■ In the Matter of KIMMARIE SALVATI, Respondent, v JOHN SALVATI, Appellant. [633 NYS2d 819] —In a custody proceeding pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Queens County (Lubow, J.), dated May 19, 1995, which, after a hearing, granted permanent custody of the parties' child to the mother.

Ordered that the order is reversed, on the law, without costs or disbursements, and the proceeding is dismissed.

The parties' child was born on April 16, 1991, shortly after their marriage. In October 1992, before the child was two years old, the parties signed a separation and custody agreement. The agreement provided that the father would have custody of the child and that the mother would have visitation on certain specified days. In November 1993, the mother petitioned for custody of the child.

We recognize that the Family Court's determination should be accorded great deference on appeal since it had the opportunity to assess the witnesses' demeanor and credibility. Nevertheless, the authority of this Court is as broad as that of the Family Court in custody matters *(see, Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946), and we would be seriously remiss if we affirmed a custody determination that lacks a sound and substantial basis in the record *(see, Matter of Sullivan v Sullivan,* 190 AD2d 852; *Matter of Krebsbach v Gallagher,* 181 AD2d 363; *Matter of Robert T. F. v Rosemary F.,* 148 AD2d 449). We conclude that the Family Court's determination to award custody of the child to the mother is not supported by the record.

A change of custody should be made only if the totality of the circumstances warrants a change that is in the best interests of the child *(see, Matter of Sullivan v Sullivan,* 190 AD2d 852, *supra).* "Among the factors to be considered are the quality of the home environment and the parental guidance the custodial parent provides for the child * * * the ability of each parent to provide for the child's emotional and intellectual development * * * the financial status and ability of each parent to provide for the child * * * the relative fitness of the respective parents, and the length of time the present custody arrangement has been in effect" *(Matter of Krebsbach v Gallagher,* 181 AD2d, at 364-365, *supra; see also, Eschbach v Eschbach,* 56 NY2d 167; *Friederwitzer v Friederwitzer,* 55 NY2d 89; *Matter of Ellen K. v John K.,* 186 AD2d 656). Priority in custody disputes should usually be given to the parent who was first awarded custody by the court or by voluntary agreement because this policy assures stability in the child's life *(see, Friederwitzer v Friederwitzer, supra,* at 94; *see also, Eschbach v Eschbach, supra,* at 172; *Matter of Nehra v Uhlar,* 43 NY2d 242, 251; *Matter of Krebsbach v Gallagher, supra,* at 365; *Keating v Keating,* 147 AD2d 675).

The Family Court in this case failed to give sufficient weight to the facts that the child, who was almost four years old at the time of the hearing, had resided with his father his entire life and that the father had been his primary caretaker even

before the parties had separated *(see, Matter of Lobo v Muttee,* 196 AD2d 585; *Matter of Sullivan v Sullivan, supra).* Both forensic experts recommended that the child remain in the father's custody. Moreover, the original custody arrangement was due to the voluntary agreement of the parents. The stability that the original custody arrangement provides is a vital factor in the child's welfare. When, as here, there is no indication that a change of custody will result in significantly enhancing the child's welfare, it is generally considered in the child's best interests not to disrupt his life.

We conclude that the evidence establishes that the child is well cared for by his father, with whom he has a close relationship, and that the mother is not able to provide a better home environment or better care for the child. Under these circumstances, we find that custody should remain with the father. Thompson, J. P., Copertino and Friedmann, JJ., concur.

Goldstein, J., dissents and votes to affirm the order appealed from, with the following memorandum, with which Hart, J., concurs: I cannot concur with the majority that there is no basis in the record for the determination of the Family Court that the best interests of the child would be served by awarding custody to his mother.

It is well settled that "priority is afforded the first determination of custody in the belief the stability this policy will assure in the child's life is in the child's best interests" *(Eschbach v Eschbach,* 56 NY2d 167, 171). However, "[n]o agreement of the parties can bind the court to a disposition other than that which a weighing of all factors involved shows to be in the child's best interest" *(Friederwitzer v Friederwitzer,* 55 NY2d 89, 95).

The majority, in reversing the Family Court's determination, states, "Both forensic experts recommended that the child remain in the father's custody." This statement is not accurate. While one expert favored preserving the status quo, the other expert did not make any recommendation about which parent should have custody. The second expert did conclude, however, without reservations, that the mother exhibits excellent parental qualities and that she is fully capable of assuming custody of the child. While the second expert also concluded that the father is capable of providing adequate care for the child and conceivably could retain custody of him, as the Family Court noted, this recommendation is a rather lukewarm endorsement of the father. In any case, the Family Court is not bound as a matter of law by the recommendations of the forensic experts *(see, Matter of Prete v Prete,* 193 AD2d 804, 805).

After hearing extensive testimony, the Family Court concluded that the father has used the child as a pawn to exact revenge against the mother; that, rather than being stable he is incapable of being self-sufficient and has an overwhelming tendency toward dependency; and that, if the father were awarded custody, he would cause the child to be alienated from his mother. These conclusions are fully supported by the evidence in the record.

At the custody hearing, the father acknowledged that, after he and the mother separated in October 1992, he and the child moved to his grandmother's home in New Jersey. In January 1993, the father and the child moved to an apartment with the father's girlfriend. During the pendency of this custody proceeding, the father and the child moved to a home that the father's girlfriend purchased in her name only in Lake Ronkonkoma, Long Island. The Family Court noted that Lake Ronkonkoma is a sizable commuting distance from where the mother lives.

During the pendency of this proceeding and for significant periods prior thereto, the father was not self-supporting. At the time of the hearing, the father was dependent upon the mother's child support payments. Although the father and his girlfriend plan to marry, the girlfriend acknowledged at the hearing they cannot set a date to do so. The Family Court found this state of affairs particularly disturbing since the stability of the child's living arrangements are dependent upon the father's girlfriend, leaving the child's future very tentative.

The mother, on the other hand, was entirely self-sufficient prior to and during the present proceeding and served as the family's sole source of support during a substantial portion of the parties' marriage. At the time of the hearing, she was living with her fiance and planned to marry him as soon as the parties' matrimonial action is resolved. Thus, the Family Court concluded, with a sound and substantial basis in the record, that an award of custody to the mother carries with it greater assurances of stability than an award of custody to the father.

With respect to the father's use of the child as a pawn against the mother, the mother testified that she commenced the present proceeding when the father refused her visitation unless she came to a financial agreement with him. Although the father denied that he did such a thing, the Family Court, who had the opportunity to see and hear the witnesses, chose to credit the mother's testimony and to discredit the testimony of the father, whom the court found was "smug, hostile and

evasive during his testimony." A denial of visitation, standing alone, may be a ground for a change of custody *(see, Matter of Gloria S. v Richard B.,* 80 AD2d 72), and the father's move to Lake Ronkonkoma did not serve to facilitate the mother's exercise of her visitation rights *(see, Matter of Radford v Propper,* 190 AD2d 93; *Rybicki v Rybicki,* 176 AD2d 867). Moreover, using visitation as a quid pro quo for a financial settlement is particularly reprehensible.

During the present proceeding, the father claimed that the mother's fiance sexually abused the child. The father took the child to a pediatrician for an examination, and the pediatrician found that there was no physical evidence to substantiate the father's complaint. Nevertheless, a complaint was filed with the child welfare authorities, who found the charge to be unfounded. This false allegation of child abuse is another example of the father's efforts to interfere with the relationship between the child and his mother *(see, Matter of Gago v Acevedo,* 214 AD2d 565).

Accordingly, the Family Court's determination that the best interests of the child would be served by changing custody of the child to the mother has a sound and substantial basis in the record and should not be disturbed *(see, Matter of Wilson v Wilson,* 218 AD2d 662; *Matter of Gloria S. v Richard B.,* 80 AD2d 72, *supra).*