■ FRANK CERVERA, Appellant, v ROSSANNA BRESSLER, Respondent. [934 NYS2d 500]—

Since the parties' divorce in February 2001, they have been involved in constant litigation surrounding custody of their child, visitation rights of the noncustodial father, and the apportionment of costs and expenses. In a stipulation entered into between the parties dated September 25, 2003, which was so-ordered by the Supreme Court in April 2004, the parties agreed to joint custody of their daughter, born in 1996, with the defendant mother having primary physical custody and the plaintiff father having liberal unsupervised visitation. By motion dated January 28, 2005, the mother moved to modify the stipulation so as to award her sole legal and physical custody of the child. She also sought to suspend the father's visitation or, alternatively, to replace his unsupervised visitation with supervised visitation. In February 2005, the father cross-moved to modify the stipulation so as to award him sole legal and physical custody of the child. Thereafter, other motions were filed by the father and the attorney for the child involving the father's visitation. In 2008, the father moved, inter alia, for an immediate transfer of physical custody of the subject child from the mother to him, restoration of unsupervised visitation, and suspension of future child support payments on the ground that the mother was interfering with his visitation. The orders issued on those motions resulted in appeals and orders from this Court, among other things, remitting the matter to the Supreme Court for a hearing with respect to the issues raised by the aforesaid branches of the father's 2008 motion and the mother's motion dated January 28, 2005, which were, inter alia, to suspend visitation (*see Cervera v Bressler*, 64 AD3d 533 [2009]; *Cervera v Bressler*, 50 AD3d 837 [2008]).

In 2009, the Supreme Court conducted a hearing as directed. In an order entered July 29, 2010, the Supreme Court, inter alia, granted that branch of the mother's motion which was to modify the stipulation so as to award her sole legal and physical custody of the child, directed that the father and the child initially attend unification therapy and, thereafter, supervised visitation with a therapist for a period of three months, and denied that branch of the father's motion which was to suspend his future child support payments. The father appeals. We affirm the order entered July 29, 2010, insofar as appealed from.

"[A] custody [and visitation] determination is a matter entrusted primarily to the discretion of the trial court which is in the most advantageous position to evaluate the testimony, character, and sincerity of the parties" (*Santoro v Santoro,* 224 AD2d 510, 511 [1996]; *see Eschbach v Eschbach,* 56 NY2d 167, 171 [1982]). The trial court's determination should not be disturbed unless it lacks a sound and substantial basis in the record (*see Eschbach v Eschbach,* 56 NY2d at 173; *Albert v Albert,* 60 AD3d 979 [2009]; *Allain v Allain,* 35 AD3d 513, 513-514 [2006]; *Santoro v Santoro,* 224 AD2d at 511).

"In determining whether a custody agreement should be modified, the paramount issue before the court is whether, under the totality of the circumstances, a modification of custody is in the best interests of the child" (*Cuccurullo v Cuccurullo,* 21 AD3d 983, 984 [2005]; *see Teuschler v Teuschler,* 242 AD2d 289, 290 [1997]; *Kuncman v Kuncman,* 188 AD2d 517 [1992]). Here, the Supreme Court "properly concluded that an award of sole custody to one parent, rather than joint custody to both parents, was in the best interests of the child given the level of acrimony between the parties and their inability to function together in a manner necessary for a joint arrangement" (*Mohen v Mohen,* 53 AD3d 471, 473 [2008]; *see Pambianchi v Goldberg,* 35 AD3d 688, 689 [2006]; *Granata v Granata,* 289 AD2d 527, 528 [2001]).

"Along with the factors considered in any custody determination, the court must also consider the stability and continuity afforded by maintaining the present arrangement" (*Gonzalez v Gonzalez,* 17 AD3d 635, 636 [2005]). "When . . . there is no indication that a change of [physical] custody will result in significantly enhancing the child's welfare, it is generally considered in the child's best interests not to disrupt his life" (*Matter of Salvati v Salvati,* 221 AD2d 541, 543 [1995]; *see Matter of Russell v Russell,* 72 AD3d 973, 974-975 [2010]).

Here, the parties' child had been living with her mother for eight years, since the age of four; the evidence established that she was well cared for and thriving under her mother's care, and that she preferred "not [to] be uprooted from her current home, school, friends and activities and that she wishes to continue residing with the [mother]." Moreover, there was no evidence that the father was a more fit parent or that he would be "able to provide a better home environment or better care for the child" (*Matter of Salvati v Salvati,* 221 AD2d at 543; *see Matter of Fallarino v Ayala,* 41 AD3d 714, 715 [2007]; *Gonzalez v Gonzalez,* 17 AD3d at 636). Under these circumstances, although there was evidence, and the Supreme Court concluded, that there had been interference with visitation by the mother,

her uncooperative behavior "was not sufficient to justify a change of custody" (*Matter of Fallarino v Ayala*, 41 AD3d at 715). Rather, the evidence indicates that it was in the best interests of the child, who has been with the mother since she was four years old, to remain with the mother, who is not an unfit parent (*see Matter of Russell v Russell*, 72 AD3d at 975; *Matter of Fallarino v Ayala*, 41 AD3d at 715). Thus, the court's custody determination has a sound and substantial basis in the record.

As to visitation, the Supreme Court noted that "[the child] has not seen the plaintiff [father] regularly in years, and . . . she no longer trusts him." This conclusion, supported by substantial evidence in the record, including the testimony of the therapists and the father himself, as well as the child's statements to the court during an in camera interview, warranted the court's determination that a change from the unsupervised visitation provided in the then existing so-ordered stipulation was necessary to insure the child's best interests.

"[A] noncustodial parent should have reasonable rights of visitation, and the denial of those rights to a natural parent is a drastic remedy which should only be invoked when there is substantial evidence that visitation would be detrimental to the child" (*Matter of Mera v Rodriguez*, 73 AD3d 1069, 1069 [2010] [internal quotation marks omitted]; *see Matter of Sinnott-Turner v Kolba*, 60 AD3d 774, 775 [2009]; *Matter of Grisanti v Grisanti*, 4 AD3d 471, 473 [2004]). " 'While not determinative, the child's expressed preference is some indication of what is in the child's best interests,' " provided that the court consider " 'the age and maturity of the child and the potential for influence having been exerted on the child' " (*Matter of Schouten v Schouten*, 155 AD2d 461, 463 [1989], quoting *Eschbach v Eschbach*, 56 NY2d at 173).

Here, there was substantial evidence that unsupervised visitation in a nontherapeutic setting would be detrimental to the child. The Supreme Court heard testimony from the child's three therapists, who treated her over a period of more than 10 years. All testified to the child's fear and dislike of the father's wife and her loss of trust with regard to the father. As the court correctly noted in the order appealed from, "none of the mental health experts disagreed with the need for some form of supervised or therapeutic visitation initially to re-establish the broken relationship between [the child] and her father." All agreed that unsupervised visitation at this time would not be a good idea, "because of [the child's] level of distress and discomfort." Moreover, the Supreme Court noted that the child

herself clearly expressed to the court that she would not agree to visitation except in a supervised setting. Under these circumstances, the Supreme Court's determination that visitation supervised by a therapist would be in the best interests of the child has a sound and substantial basis in the record and should not be disturbed (*see Matter of Sinnott-Turner v Kolba*, 60 AD3d at 776; *Matter of Thompson v Yu-Thompson*, 41 AD3d 487, 488 [2007]).

Contrary to the father's contention, the Supreme Court's finding that the father had "failed to sustain his burden of proving that [the mother's] actions rose to the higher standard of active interference or deliberate frustration of [the father's] visitation rights which would warrant the suspension or termination of his support payments" is also supported by sound and sufficient evidence in the record (*see Ledgin v Ledgin*, 36 AD3d 669, 670 [2007]; *cf. Matter of Lew v Sobel*, 46 AD3d 893, 895 [2007]).

The father's remaining contentions are without merit. Dillon, J.P., Angiolillo, Florio and Dickerson, JJ., concur.