In a child custody proceeding pursuant to Family Court Act article 6, the mother and the subject child separately appeal from an order of the Family Court, Kings County (Katz, J.), dated March 21, 2013, which, after a hearing, denied the mother’s petition to modify the custody provisions set forth in a stipulation of settlement dated January 9, 2009, which was *880 incorporated but not merged in the parties’ judgment of divorce dated April 6, 2010, so as to allow her to relocate to Georgia with the subject child.
Ordered that the order is reversed, on the law, without costs or disbursements, the petition is granted, and the matter is remitted to the Family Court, Kings County, for a hearing to establish an appropriate post-relocation visitation schedule for the father.
The parties were married and had one child together. They were divorced in April 2010. The parties entered into a stipulation of settlement, which was incorporated but not merged in the parties’ judgment of divorce, whereby the mother received sole custody of the subject child, and the father was given certain visitation. The mother filed a petition in February 2011 seeking permission to relocate with the child to Georgia, where her fiancé, now husband (hereinafter the husband), works for General Electric as a chemical engineer and owns a three-bedroom house. After a hearing, the Family Court denied the mother’s petition, finding that the mother’s goal of uniting her family unit could be achieved without uprooting the child, if the husband were willing to seriously pursue employment in New York. The court also found that the father would be deprived of regular and meaningful access to the child, and that the child would no longer benefit from the father’s consistent presence in his life. The court determined that the mother failed to meet her burden of establishing that the proposed relocation was in the child’s best interests. The mother and the child separately appeal.
The Family Court erred in denying the mother’s modification petition so as to allow her to relocate to Georgia with the subject child. A parent’s relocation request must be considered on its own merits with due consideration of all the relevant circumstances, and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child (see Matter of Tropea v Tropea, 87 NY2d 727, 739 [1996]). Courts are free to consider and give appropriate weight to all of the factors that may be relevant to the determination. These factors include, but are not limited to, each parent’s reasons for seeking or opposing the move, the quality of the relationships between the child and both parents, the impact of the move on the quantity and quality of the child’s future contact with the noncustodial parent, the degree to which the custodial parent’s and child’s life may be enhanced economically, emotionally, and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through *881 suitable visitation arrangements. It is for the court to determine, based on all of the proof, whether it has been established by a preponderance of the evidence that a proposed relocation would serve the child’s best interests (see id. at 740-741). In relocation proceedings, this Court’s authority is as broad as that of the hearing court. A relocation determination will not be permitted to stand unless it is supported by a sound and substantial basis in the record (see Matter of Caruso v Cruz, 114 AD3d 769 [2014]; Matter of Hamed v Hamed, 88 AD3d 791 [2011]). The Family Court’s determination here was not supported by a sound and substantial basis in the record.
The mother proved by a preponderance of the evidence that moving to Georgia was in the child’s best interests. The mother has been the child’s primary caregiver since his birth. The father has been substantially less involved in the child’s life (see Matter of Shannon J. v Aaron B, 111 AD3d 829 [2013]; Matter of Davis v Ogden, 109 AD3d 539 [2013]). The father had no communication with the child for approximately one year after the mother and the child left the marital residence following the paternal grandmother’s filing of an eviction petition against them. The mother attends meetings at the child’s school, extracurricular activities, and medical appointments, while the father generally does not attend school meetings or events or medical appointments, or communicate with the child’s doctors or teachers (see Matter of Davis v Ogden, 109 AD3d at 540; Matter of Vargas v Dixon, 78 AD3d 1431 [2010]; Matter of Sara ZZ. v Matthew A., 77 AD3d 1059 [2010]). The father has been inconsistent in exercising visitation, making last-minute changes to the visitation schedule set forth in the stipulation and failing to exercise the three weeks of summer visitation set forth in the stipulation until 2012, while the hearing was pending (see Matter of Hamed v Hamed, 88 AD3d at 792; Matter of Vargas v Dixon, 78 AD3d at 1433; Matter of Linn v Wilson, 68 AD3d 1767 [2009]).
The record demonstrates that the move would not have an adverse impact on the relationship between the father and the child. Although the mother’s relocation will have an impact on the father’s ability to spend time with the child, a liberal visitation schedule, including extended visits during summer and school vacations, will allow for the continuation of a meaningful relationship between the father and the child (see Matter of Hirtz v Hirtz, 108 AD3d 712 [2013]; Matter of Tracy A.G. v Undine J., 105 AD3d 1046 [2013]), and will allow the child to spend meaningful time with the paternal grandmother, with whom he has a good relationship (see Matter of Tracy A.G. v *882 Undine J., 105 AD3d at 1048). The mother has promised to comply with an order of visitation, and to promote and encourage the father-child relationship, including visits and communication by other means. Significantly, both the mother and the husband testified that they will pay for the child’s travel expenses. There is nothing to indicate that the mother will not comply with visitation, especially given that the father acknowledged that she abided by the terms of the stipulation regarding visitation. Under the circumstances of this case, less frequent but more extended visits will be equally conducive, or perhaps even more conducive, to the maintenance of a close father-child relationship, as such extended visits will give them the opportunity to interact in a normalized domestic setting (see Tropea v Tropea, 87 NY2d at 738; Matter of Parish A. v Jamie T., 49 AD3d 1322 [2008]). Indeed, under a schedule granting the father extended visitation, the father potentially could have even more time with the child than under the current schedule (see Matter of Vargas v Dixon, 78 AD3d at 1433). Accordingly, it will be feasible to preserve the father-child relationship through suitable visitation arrangements.
The record further reveals that the move will have multiple benefits for the child, emotionally, economically, and educationally. The husband and the child have developed a loving and mutually supportive relationship, as have the child and his half-sister; thus, the move will benefit the child by strengthening and stabilizing the new post-divorce family unit (see Thompson v Smith, 277 AD2d 520 [2000]; see also Matter of Bobroff v Farwell, 57 AD3d 1284 [2008]; Matter of Parish A. v Jamie T., 49 AD3d at 1323). The husband has a stable job in Georgia and, since 2007, has owned a three-bedroom home with a backyard. The move will enable the new family unit to reduce their living expenses by not having to maintain two separate households, which will benefit the child (see Bobroff v Farwell, 57 AD3d at 1286). The family already has social contacts in Georgia, including a church community, and the child has made friends there.
The child’s interests will be better served by fashioning a visitation plan that maximizes the father’s opportunity to maintain a positive nurturing relationship with the child while enabling the mother, who has the primary child-rearing responsibility, to move forward with her life (see Tropea v Tropea, 87 NY2d at 740; Matter of Gillard v Gillard, 241 AD2d 966 [1997]).
During the in camera interview, the child expressed his desire to move to Georgia. While a child’s expressed preference in a custody proceeding is not determinative, it is some indication of *883 what is in the child’s best interests (see Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; Cervera v Bressler, 90 AD3d 803 [2011]), particularly where the attorney for the child recommended that the child’s wishes be given weight, and where the interview demonstrates the child’s level of maturity and ability to articulate his preferences (see Matter of Winston v Gates, 64 AD3d 815 [2009]). Finally, the attorney for the child supported relocation as being in the child’s best interests, and that determination is not contradicted by the record and is entitled to some weight (see Matter of Hamed v Hamed, 88 AD3d at 792; see also Matter of Sahagun v Alix, 107 AD3d 722 [2013]).
Given that the preponderance of the evidence established that the move, with a liberal visitation schedule for the father, will be in the child’s best interests, the Family Court erred in denying the mother’s modification petition so as to allow her to relocate with the child to Georgia. Accordingly, we reverse the order appealed from, grant the mother’s petition, and remit the matter to the Family Court, Kings County, to establish a visitation schedule.
Mastro, J.E, Rivera, Balkin and Miller, JJ., concur.