Matter of Argila v Edelman (2019 NY Slip Op 05398)





Matter of Argila v Edelman


2019 NY Slip Op 05398


Decided on July 3, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 3, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
JOSEPH J. MALTESE
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2018-08029
 (Docket Nos. V-02784-15/16A, V-02784-15/17E/17F)

[*1]In the Matter of Anthony Argila, respondent,
v
Alison Edelman, appellant. (Proceeding Nos. 1 and 3)
In the Matter of Alison Edelman, appellant,
v
Anthony Argila, respondent. (Proceeding Nos. 2 and 4)


Feldman and Feldman, Uniondale, NY (Steven A. Feldman and Arza Rayches Feldman of counsel), for appellant.
Susan A. DeNatale, Bayport, NY, for respondent.
Laurette D. Mulry, Central Islip, NY (John B. Belmonte of counsel), attorney for the child.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Suffolk County (Anthony S. Senft, Jr., J.), dated June 18, 2018. The order, insofar as appealed from, after a hearing, (1) denied the mother's petition to modify the parties' so-ordered custody agreement and parenting plan dated April 22, 2016, so as to allow her to relocate with the parties' child to Florida, (2), in effect, denied the mother's violation petition, and (3) granted those branches of the father's petitions which were to modify the parties' so-ordered custody agreement and parenting plan so as to award the parties joint legal custody of the child.
ORDERED that the order is affirmed insofar as appealed from, with costs.
The parties, who were not married, have one child together, born in 2015. The parties entered into a so-ordered custody agreement and parenting plan dated April 22, 2016 (hereinafter the stipulation), which, inter alia, awarded sole legal custody of the child to the mother and parental access to the father. Following an incident in November 2016, during which the father allegedly violated the stipulation and the mother allegedly interfered with the father's parental access, the father commenced a proceeding in the Family Court, Suffolk County, to modify the stipulation, inter alia, so as to award the parties joint legal custody with a revised parental access schedule. The mother filed a violation petition thereafter, and the father filed an additional modification petition seeking substantially the same relief sought in his initial petition. In March 2017, the mother petitioned for permission to relocate with the child to Florida. After a hearing, the Family Court, in an order dated June 18, 2018, denied the mother's relocation petition, in effect, denied the mother's violation petition, and granted those branches of the father's petitions which were to modify the stipulation so as to award the parties joint legal custody. The mother appeals.
" A parent seeking leave to relocate with a child bears the burden of establishing by a preponderance of the evidence that the proposed move would be in the child's best interests'" (Matter of Hall v Clas, 144 AD3d 801, 802, quoting Matter of Ventura v Huggins, 141 AD3d 600, 600 [internal quotation marks omitted]). In determining whether a proposed move is in a child's best interests, courts are "free to consider and give appropriate weight to all of the factors that may be relevant to the determination" (Matter of Tropea v Tropea, 87 NY2d 727, 740). These factors include, but are not limited to, "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (id. at 740-741; see Matter of Hall v Hall, 118 AD3d 879). In assessing these factors, "no single factor should be treated as dispositive or given such disproportionate weight as to predetermine the outcome" (Matter of Tropea v Tropea, 87 NY2d at 738). However, "the impact of the move on the relationship between the child and the noncustodial parent will remain a central concern" (id. at 739; see Matter of Caruso v Cruz, 114 AD3d 769, 771; Matter of Francis-Miller v Miller, 111 AD3d 632, 635). " In reviewing the Family Court's determination, we accord considerable deference to the court's assessment of the witnesses' demeanor and credibility'" (Matter of Hall v Clas, 144 AD3d at 802, quoting Matter of Ventura v Huggins, 141 AD3d at 601 [internal quotation marks omitted]).
Here, contrary to the mother's contentions, the Family Court's determination that relocation to Florida was not in the best interests of the child had a sound and substantial basis in the record (see Matter of Tropea v Tropea, 87 NY2d at 739-741; Matter of Wallace v Johnson, 82 AD3d 994, 994; Matter of Steadman v Roumer, 81 AD3d 653, 654; Matter of Mascola v Mascola, 251 AD2d 414, 415).
We also agree with the Family Court insofar as it determined that the mother failed to demonstrate by clear and convincing evidence that the father willfully violated the stipulation, and, in effect, denied the mother's violation petition (see Matter of Lupo v Rainsford, 162 AD3d 1032, 1032; Matter of Januszka v Januszka, 90 AD3d 1253, 1253; Matter of Barnes v Barnes, 54 AD3d 755, 755-756). The mother's related contention, that the court improperly excluded certain recordings from evidence pursuant to CPLR 4506(1), is without merit, as she failed to demonstrate that the recordings were "of a conversation to which the child [was] a party" or that her belief that the recording served the best interests of the child had an "objectively reasonable" basis (People v Badalamenti, 27 NY3d 423, 435; see CPLR 4506[1]; Penal Law §§ 250.00[2]; 250.05; cf. Ortiz v New York City Hous. Auth., 105 AD3d 652, 652; Roupp v Conrad, 287 AD2d 937, 938).
We agree with the Family Court's determination to grant those branches of the father's modification petitions which were to modify the stipulation so as to award the parties joint legal custody. "Modification of an existing custody arrangement is permissible only upon a showing that there has been a change in circumstances such that modification is necessary to ensure the best interests of the child" (Matter of Boodhoo v Rampersaud, 122 AD3d 624, 625; see Matter of Morris v Morris, 156 AD3d 702, 703), based on "the totality of the circumstances" (Matter of Bonthu v Bonthu, 67 AD3d 906, 907; see Eschbach v Eschbach, 56 NY2d 167, 171). "Joint custody reposes in both parents a shared responsibility for and control of a child's upbringing' and is appropriate between relatively stable, amicable parents [who behave] in [a] mature [and] civilized fashion'" (Matter of Lee v Fitts, 147 AD3d 1058, 1059, quoting Braiman v Braiman, 44 NY2d 584, 589-590). "As a custody determination depends to a great extent upon an assessment of the character and credibility of the parties and witnesses, the character and credibility findings of the Family Court will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Cusano v Coitino, 155 AD3d 722, 723). Here, the court's determination had a sound and substantial basis in the record, as the father established that there had been a change in circumstances, such that modification of the stipulation so as to award the parties joint legal custody was necessary to ensure the best interests of the child (see Matter of Carter v Carter, 111 AD3d 715, 715).
The mother contends that the Family Court improperly restricted her examination of the father as part of her direct case by refusing to permit her to use leading questions. " While an [*2]adverse party who is called as a witness may be viewed as a hostile witness and direct examination may assume the nature of cross-examination by the use of leading questions, whether to permit such questions over objection is a matter which rests in the [sound] discretion of the trial court'" (Matter of Giaquinto, 164 AD3d 1527, 1530-1531, affd 32 NY3d 1180, quoting Matter of Ostrander v Ostrander, 280 AD2d 793, 793; see Ferri v Ferri, 60 AD3d 625, 625; Jordan v Parrinello, 144 AD2d 540, 540). Here, the mother already had the opportunity to cross-examine the father using leading questions when he testified as part of his own direct case. In any event, the father was "not reluctant or evasive in answering questions" (Matter of Giaquinto, 164 AD3d at 1531), the mother's counsel asked many leading questions despite the court's ruling, and to the extent objections were sustained, the mother, on appeal, identifies no instance in which she was unable to elicit necessary information without the use of leading questions. Thus, we agree with the Family Court's determination to deny the mother's requests to conduct direct examination of the father through the use of leading questions (see id.).
LEVENTHAL, J.P., MALTESE, BARROS and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court