Schwartz v Schwartz (2020 NY Slip Op 05248)





Schwartz v Schwartz


2020 NY Slip Op 05248


Decided on September 30, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 30, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
JOHN M. LEVENTHAL
SYLVIA O. HINDS-RADIX
LINDA CHRISTOPHER, JJ.


2019-12526
 (Index No. 3621/15)

[*1]Lisa Julie Schwartz, appellant,
v
David H. Schwartz, respondent.


Miller Zeiderman & Wiederkehr LLP (Faith Miller and Hasapidis Law Offices, South Salem, NY [Annette G. Hasapidis], of counsel), for appellant.
Blank Rome LLP, New York, NY (Norman S. Heller, Stephen McSweeney, and Albert L. Mandato of counsel), for respondent.
Guttridge & Cambareri, P.C., White Plains, NY (Jo-Ann Cambareri of counsel), attorney for the children.



DECISION & ORDER
In a matrimonial action, the plaintiff appeals from an order of the Supreme Court, Westchester County (Josephine Trovini, Ct. Atty. Ref.), dated October 8, 2019. The order, insofar as appealed from, after a hearing, denied the plaintiff's motion for permission to relocate with the parties' children and her application for an award of counsel fees, and granted that branch of the defendant's cross motion which was for an award of counsel fees to the extent of directing the plaintiff to pay the defendant's counsel $450,000.
ORDERED that the order is modified, on the facts and in the exercise of discretion, by deleting the provision thereof granting that branch of the defendant's cross motion which was for an award of counsel fees to the extent of directing the plaintiff to pay the defendant's counsel $450,000, and substituting therefor a provision denying that branch of the cross motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
The parties were married in 2005. There are three children of the marriage, born in 2006, 2009, and 2011. The defendant grew up in Scarsdale and the plaintiff grew up mostly in Armonk. The parties moved to Scarsdale in 2009, where the defendant's parents, friends, and religious community were located. The plaintiff commenced this action for a divorce and ancillary relief in 2015. The parties entered into a settlement agreement (hereinafter the agreement) in 2017, which was incorporated but not merged into their judgment of divorce dated November 30, 2017.
The agreement provided, inter alia, that the plaintiff, with whom the children primarily resided, would continue to reside in Scarsdale with the children unless the defendant died, the defendant moved out of Scarsdale, or the plaintiff met the conditions set forth in paragraph 122(iii) of the agreement, which provided: "In order to effectuate a global settlement, the [plaintiff] hereby agrees that she shall continue to reside with the children in Scarsdale, New York ("Scarsdale") until the youngest child graduates High School unless . . . (iii) upon application by the [plaintiff] on notice to the [defendant] filed no sooner than one year after the Execution Date, the [*2][plaintiff] substantiates to the satisfaction of the Court that (a) her continued residence with the Children in Scarsdale is intolerable to her for specific reasons that are determined by the Court to be legitimate reasons including but not limited to the actions of the [defendant] or members of his family or the actions of members of the [defendant's] religious community and that [plaintiff] did not affirmatively cause any of the actions or events that gave rise to the intolerable circumstances and (b) that her moving out of Scarsdale would likely alleviate such intolerable circumstances and (c) that her moving out of Scarsdale would not be contrary to the Children's best interests; and (d) the [plaintiff] obtains an order . . . granting her permission to move out of Scarsdale on the basis of Paragraph 122(iii).
By order to show cause filed September 18, 2018, the plaintiff moved for permission to relocate within Westchester County from Scarsdale to Armonk, approximately 12.5 miles away, and to enroll the children in the Byram Hills School District. The plaintiff argued that pursuant to the agreement, living in Scarsdale was intolerable to her. The defendant opposed the plaintiff's motion and cross-moved, inter alia, for an award of counsel fees. The defendant argued that if the children moved to Armonk, his parental access and relationship with the children would be negatively impacted in that his ability to participate in the children's extracurricular activities would be significantly impeded and that the proposed move was not in their best interests. An extensive hearing was held, and the parties agreed to post-hearing submissions on the issue of counsel fees. In the order appealed from, the Supreme Court denied the plaintiff's motion for permission to relocate and her application for an award of counsel fees and granted that branch of the defendant's cross motion which was for an award of counsel fees to the extent of directing the plaintiff to pay the defendant's counsel $450,000. We modify.
"'A parent seeking leave to relocate with a child bears the burden of establishing by a preponderance of the evidence that the proposed move would be in the child's best interests'" (Matter of Hall v Clas, 144 AD3d 801, 802, quoting Matter of Ventura v Huggins, 141 AD3d 600, 600 [internal quotation marks omitted]). In determining whether a proposed move is in a child's best interests, the Court of Appeals held in Matter of Tropea v Tropea (87 NY2d 727, 740) that, "in all cases, the courts should be free to consider and give appropriate weight to all of the factors that may be relevant to the determination." These factors include, but are not limited to, "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (id. at 740-741; see Matter of Hall v Hall, 118 AD3d 879). In assessing these factors, "no single factor should be treated as dispositive or given such disproportionate weight as to predetermine the outcome" (Matter of Tropea v Tropea, 87 NY2d at 738). However, "the impact of the move on the relationship between the child and the noncustodial parent will remain a central concern" (id. at 739; see Matter of Caruso v Cruz, 114 AD3d 769, 771; Matter of Francis-Miller v Miller, 111 AD3d 632, 635). "The trial court's credibility determinations are entitled to considerable deference on appeal" (Sternberg-Kennedy v Kennedy, 166 AD3d 1050, 1051).
"No agreement of the parties can bind the court to a disposition other than that which a weighing of all the factors involved shows to be in the child's best interest" (Friederwitzer v Friederwitzer, 55 NY2d 89, 95; see McMahan v McMahan, 62 AD3d 968, 968; Rheingold v Rheingold, 4 AD3d 406). Thus, the parties' agreement is not dispositive, but rather, is a factor to be considered along with all of the other factors a hearing court should consider when determining whether the relocation is in the best interests of the children (see Matter of Tropea v Tropea, 87 NY2d at 741 n 2; Rheingold v Rheingold, 4 AD3d 406; Matter of Church v Cohen, 266 AD2d 285; Savage v Morrison, 262 AD2d 1077). While not dispositive, we agree with the Supreme Court's consideration of the relocation provision in paragraph 122(iii) of the parties' agreement and determination that the plaintiff failed to sustain her burden to move out of Scarsdale under that provision. Moreover, the plaintiff acknowledged that she did not attempt to avail herself of the less drastic option to move to the other side of Scarsdale in order to remove herself from the alleged intolerable conditions she was experiencing. Indeed, the record evidence did not support her [*3]contention that such a move would not alleviate the alleged intolerable conditions.
Contrary to the plaintiff's contentions, the Supreme Court's determination that relocation was not in the best interests of the children had a sound and substantial basis in the record (see Matter of Tropea v Tropea, 87 NY2d at 739-741; Matter of Wallace v Johnson, 82 AD3d 994, 994; Matter of Steadman v Roumer, 81 AD3d 653, 654; Matter of Mascola v Mascola, 251 AD2d 414, 415). While the proposed move is only approximately 12.5 miles away from the former marital residence, the distance of the move is only one factor to consider (see Lipari v Lipari, 146 AD3d 870, 871). Here, the evidence established the proposed move would significantly hamper the defendant's ability to participate in the children's activities and would therefore negatively impact the quantity and quality of the children's future contact with the defendant. Specifically, as part of the defendant's religious practice of modern Orthodox Judaism, he does not generally travel by motor vehicle on the Sabbath or on certain religious holidays. However, because much of the children's extracurricular activities that occur on the Sabbath take place in Scarsdale, he is able to attend and get the children to those activities by walking, biking, or scooter. The defendant attends the children's activities both during the plaintiff's time with them, as well as during his time with them. Under these circumstances, moving the children from Scarsdale will negatively impact their access time and relationship with the defendant in that he will be unable to attend those activities that occur during the plaintiff's time with the children and he will be unable to get the children to those activities that occur when the children are with him.
Moreover, the plaintiff's reason for moving is focused on her level of discomfort living in a community that she no longer feels a part of because of the divorce. The children, on the other hand, have significant ties to Scarsdale, including their friends at school, their activities and sports teams, their synagogue, and several of the defendant's family members. "While the respective rights of the custodial and noncustodial parents are unquestionably significant factors that must be considered, it is the rights and needs of the children that must be accorded the greatest weight" (Matter of Tropea v Tropea, 87 NY2d at 739 [citation omitted]). Further, the plaintiff also failed to prove by a preponderance of the evidence that the children's lives would be enhanced emotionally or educationally by the proposed move. Notably, the parties stipulated that the Armonk and Scarsdale school districts were comparable. With regard to the parties' older child who had certain educational needs and social difficulties, the plaintiff's contention that moving to Armonk would be beneficial to that child was wholly speculative (see Matter of Lyons v Sepe, 163 AD3d 567, 569; DeFilippis v DeFilippis, 146 AD3d 750, 751; Matter of McBryde v Bodden, 91 AD3d 781, 782).
However, we agree with the plaintiff's contention that the Supreme Court improvidently exercised its discretion in awarding the defendant counsel fees in the amount of $450,000. In any action or proceeding to enforce any provision of a judgment or order entered in an action for a divorce, the court may, in its discretion, require that either party pay counsel fees "to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires having regard [for] the circumstances of the case and of the respective parties. There shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 238; see Domestic Relations Law § 237[b]; Maddaloni v Maddaloni, 163 AD3d 794). "In determining whether an award of counsel fees is appropriate, the court must consider the equities and circumstances of each particular case, the relative merit of the parties' contentions and their respective financial positions" (Boukas v Boukas, 163 AD3d 755, 756; see Mons Pinto v Pinto, 151 AD3d 715). Here, notwithstanding that a court must consider the parties' financial circumstances in making an award of counsel fees, the court's award to the defendant makes no reference to the parties' finances (see Roddy v Roddy, 161 AD3d 441, 441-442). Accordingly, there is no basis in the record for an award of counsel fees to the defendant.
For the same reason, there is no merit to the plaintiff's contention that the Supreme Court improvidently exercised its discretion in denying her application for an award of counsel fees.
RIVERA, J.P., LEVENTHAL, HINDS-RADIX and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court